RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for A10 Capital, LLC, in its capacity as Servicer and Special Servicer, for and on behalf of Wilmington Trust, National Association, solely in its capacity as Trustee in trust for Holders of A10 Single Asset Commercial Mortgage 2023-GTWY, Commercial Mortgage Pass-Through Certificates, Series 2023-GTWY*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------x
                                     :
In re:                               :  Chapter 11
                                     :
THE GATEWAY AT WYNWOOD LLC,          :  Case No.:  24-72586 (LAS)
                                     :
         Debtor.                     :
------------------------------------x
                                    x
In re:                               :
                                     :
                                     :  Chapter 11
2830 WYNWOOD PROPERTIES LLC,         :
                                     :  Case No.:  24-72586 (LAS)
         Debtor.                     :
                                     :
------------------------------------x

**SECURED CREDITOR'S REPLY TO THE DEBTORS' JOINT**
**OPPOSITION TO MOTION TO DISMISS THE DEBTORS'**
**<u>CHAPTER 11 CASES AS UNAUTHORIZED FILINGS</u>**

A10 Capital, LLC, in its capacity as Servicer and Special Servicer, for and on behalf of Wilmington Trust, National Association, solely in its capacity as Trustee in trust for Holders of A10 Single Asset Commercial Mortgage 2023-GTWY, Commercial Mortgage Pass-Through Certificates, Series 2023-GTWY (the "<u>Secured Creditor</u>"), by its counsel Rubin LLC, submits this reply (the "<u>Reply</u>") to the joint opposition (the "<u>Objection</u>") [ECF No. 25] filed by The Gateway

at Wynwood LLC ("Gateway") and 2830 Wynwood Properties LLC ("2830 Wynwood," and together with Gateway, collectively the "Debtors") to the Secured Creditor's motion (the "Motion")[1] [ECF No. 12] for entry of an order dismissing the Debtors' chapter 11 cases as unauthorized filings. In support of this Reply, the Secured Creditor respectfully represents as follows:

## PRELIMINARY STATEMENT

1. What is noteworthy about the Objection is the Debtors' acknowledgment that they have not, in fact, complied with the terms of their own Operating Agreements and Loan Documents in connection with the unauthorized commencement of their Chapter 11 Cases by the Trustee without the prior written consent of all of the members of the Debtors and the Debtors' Independent Managers. The Debtors' "hope" that these deficiencies can be satisfied by a post-petition ratification is not sufficient to avoid dismissal of the Chapter 11 Cases as unauthorized filings. "If the [court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, *it has no alternative but to dismiss the petition*." *Price v. Gurney*, 324 U.S. 100, 106 (1945) (emphasis added).

2. Moreover, the Debtors' argument that the provisions invoked by the Secured Creditor in its Motion (the unanimous consent of all members and the Independent Managers to file a bankruptcy case) are unenforceable as against public policy is grounded on the Debtors' diversionary argument that the provision in the Gateway Operating Agreement[2] requiring the Secured Lender's consent to file a bankruptcy case is void. The Secured Lender has not tried to invoke the lender-consent provision in the Gateway Operating Agreement (there is no such

---

[1] Capitalize terms not defined in this Reply have the meaning ascribed to them in the Motion.

[2] The Debtors incorrectly state that the consent of the Secured Creditor is required under both Operating Agreements.

2

provision in the 2830 Wynwood Operating Agreement). Moreover, the cases cited in the Objection in support of the Debtors' "void-against-public-policy" argument are either inapposite or plainly distinguishable because the Secured Creditor is *not* relying on the Debtors' failure to obtain the Secured Creditor's consent to file the Chapter 11 Cases as a basis for dismissal. Here, the Secured Creditor is not seeking dismissal of these cases because it did not consent to their filing. Rather, the Secured Creditor is seeking dismissal because the Debtors' own members did not provide the requisite consent to the filings.

3. Lastly, the Secured Creditor would note to the Court the Debtors' deeply cynical statement that the Secured Creditor's consent to the Debtor's use of cash collateral[3] somehow undercuts the Secured Lender's ability to argue that the Chapter 11 Cases should be dismissed. *See* Objection ¶ 16 ("That the Lender has consented to the use of cash collateral while pressing forward with dismissal on corporate governance grounds is difficult to reconcile."). The Secured Creditor cannot and should not be criticized for its consent to the Debtors' conditional use of cash collateral in the interest of protecting its collateral. In any event, it should be no surprise to the Debtors that the Secured Creditor would seek dismissal of the Chapter 11 Cases even if it consented to the use of cash collateral because counsel for the Secured Creditor so informed the Court at the Debtors' initial case conference held on July 16, 2024, and the Secured Creditor's right to seek dismissal of these cases as unauthorized filings was expressly reserved in the Cash Collateral Stipulation.[4]

---

[3] *See Interim Stipulation and Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief* (the "<u>Cash Collateral Stipulation</u>") [ECF No. 17].

[4] *See* Cash Collateral Stipulation ¶ X ("The Secured Creditor asserts that [the Trustee] did not have authority to authorize the Debtors to commence the Chapter 11 Cases and the Secured Creditor reserves all its rights and remedies in connection therewith."); *id.* at ¶ 34 ("Nothing contained in this Stipulation and Order will prejudice, or be deemed a waiver of, the Secured Creditor's right to contest the validity of the filing of the Chapter 11 Cases, the Debtor's good faith in commencing the Chapter 11 Cases, and/or whether the filing of the Chapter 11 Cases was properly authorized.").

4. Ultimately, the Debtors cannot rescue these Chapter 11 Cases from dismissal because their filing was not properly authorized. Putting aside the fact that the Trustee was invalidly assigned the membership interests in the Debtor in violation of the terms of the Loan Documents, what is fatal to these cases is that the Trustee did not obtain the consent of all members and the Independent Managers to file them. Accordingly, the Chapter 11 Cases were not authorized to be filed and must be dismissed.

## REPLY

### I. THE PROVISIONS IN THE OPERATING AGREEMENTS REQUIRING UNANIMOUS CONSENT OF ALL MEMBERS AND THE INDEPENDENT MANAGERS ARE ENFORCEABLE

5. As set forth in detail in the Motion, the express provisions of the Operating Agreements plainly provide that the Debtors may not take any Material Action—including the filing of bankruptcy cases on behalf of the Debtors—without the unanimous prior written consent of the members and the Independent Managers. The Debtors did not obtain the prior written consent of all the members and the Independent Managers, and thus the Debtors were not authorized to commence the Chapter 11 Cases. These limitations in operating agreements on who has authority to commence a chapter 11 case, and under what circumstances a chapter 11 filing is authorized, are enforceable. *See, e.g., In re Pasta Bar By Scotto II, LLC*, 2015 WL 7307246 (Bankr. S.D.N.Y. Nov. 19, 2015) (bankruptcy filing required supermajority consent under operating agreement); *In re 3P Hightstown, LLC*, 631 B.R. 205 (Bankr. D.N.J. 2021) (debtor's operating agreement provided that it may not commence bankruptcy proceeding unless all preferred capital was returned to holders of preferred units or preferred members approved filing, and neither condition had been satisfied); *In re Orchard at Hansen Park, LLC*, 347 B.R. 822 (Bankr. N.D. Tex. 2006) (unanimous consent of all members pursuant to operating agreement required for bankruptcy filing).

4

6. The Debtors, however, mischaracterize these provisions as "blocking provisions" and "bankruptcy waivers." Although the Secured Creditor does not assert anywhere in the Motion that the Debtor's Chapter 11 Cases were unauthorized because the Debtors failed to obtain the consent of the Secured Creditor, the Debtors in their Objection argue that this "blocking position" obtained by the Secured Creditor is unenforceable. Whether such a provision is enforceable is not relevant here, because the Secured Creditor is not seeking to enforce it.[5]

7. Ignoring the cases that the Secured Creditor cited in its Motion, the Debtors cite several other cases in their Objection to support their erroneous proposition that courts have refused to enforce provisions in operating agreements similar to the ones in this case. *See* Objection ¶ 26. Those cases do not support the Debtors' argument that similar provisions have been held unenforceable, because the provisions in the operating agreements in those cases are *not* similar to the provisions here.

8. First, it is not clear why the Debtors cite to *Fallick v. Kehr*, 369 F.2d 899 (2d Cir. 1966) and *In re Thorpe Insulation Co.*, 671 F.3d 1011 (9th Cir. 2012). *Fallick v. Kehr* involved an arbitration clause in a partnership agreement that required arbitration of a dispute between two partners regarding alleged misappropriation of partnership funds. The party accused of misappropriation filed bankruptcy and obtained a discharge in his bankruptcy case. The non-debtor party thereafter recommenced the arbitration and the discharged debtor moved before the bankruptcy referee for an order permanently staying the arbitration proceeding. The Second Circuit affirmed the decisions of the bankruptcy referee and the district court declining to enjoin the arbitration proceeding because there were no 'unusual circumstances' justifying an injunction.

---

[5] In any event, the lender consent provision is contained only in the Gateway Operating Agreement and not in the 2830 Wynwood Operating Agreement. Thus, the Debtors' argument (which is irrelevant in the first instance because the Secured Creditor has not invoked the lender consent provision) is completely inapplicable with respect to 2830 Wynwood.

5

The Debtors quote the decision to support their argument that bankruptcy waivers are generally unenforceable, but when that quote is read in full, it is apparent that the *Fallick v. Kehr* has no application here: "We agree … that an advance agreement to waive the benefits of the Act would be void. But this is not that case. The agreement here affects only the forum in which a right under the Act can be asserted, and we can find nothing in the Act that grants the bankrupt an absolute right to choice of forum for determination of questions of dischargeability." *Fallick v. Kehr*, 369 F.2d at 904.

9. Similarly, *In re Thorpe Insulation Co.* does not involve a motion to dismiss an unauthorized filing. There, the bankruptcy court denied an insurer's motion to compel the debtor to arbitrate a breach of contract claim asserted by the insurer. The insurer and the debtor had entered into a prepetition settlement agreement pursuant to which the parties agreed not to assign their claims. In the bankruptcy case, the debtor assigned certain rights to insurance proceeds to a section 524(g) trust. The insurer argued that the settlement agreement prohibited the assignment. The court held that if the provisions of the settlement agreement proscribed the debtor's ability to avail itself of section 524(g) of the Bankruptcy Code, they would be unenforceable. *Fallick v. Kehr*, 369 F.2d at 1026.

10. The other cases cited are also easily distinguishable. *In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016), involved a prepetition agreement between a creditor and the debtor which required the LLC debtor to grant the creditor a single common unit interest in the debtor, and the debtor's operating agreement was amended to require the unanimous consent of all common unit holders in order to commence a bankruptcy case. This type of "golden share" scenario, in which the lender was granted the right to block a bankruptcy filing, was struck down by the court as void against public policy. Notably, the court in that case held that "[a]

6

provision in a limited liability company governance document obtained by contract, the sole purpose and effect of which is to place into the hands of a *single, minority equity holder* the ultimate authority to eviscerate the right of that entity to seek federal bankruptcy relief, *and the nature and substance of whose primary relationship with the debtor is that of creditor—not equity holder*—and which owes no duty to anyone but itself in connection with an LLC's decision to seek federal bankruptcy relief, is tantamount to an absolute waiver of that right, and, even if arguably permitted by state law, is void as contrary to federal public policy." *In re Intervention Energy Holdings, LLC*, 553 B.R. at 265 (emphasis added). But the facts of this case are different. Here, the Secured Creditor has not obtained for itself a "golden share," whereby it holds a membership interest as a creditor, and the requirement for unanimous consent of all members effectively gives the creditor a blocking position. The amendments to the Debtors' prior operating agreements made in connection with the Loans that are at issue in this case are provisions that are typically negotiated by lenders and borrowers in this type and size of mortgage loan transaction. The major decision of whether to file for bankruptcy is entrusted to the Debtors' own members, not the Secured Creditor.

11.     *In re Lexington Hospitality Group, LLC*, 577 B.R. 676 (Bankr. E.D. Ky. 2017), involved a debtor's operating agreement that was amended at the time of the making of a loan to reflect the admission of an entity owned by the lender that was given a 30% membership interest. The amended operating agreement required the consent of the independent manager and 75% of the members (bearing in mind that the lender-entity was admitted with a 30% membership interest) in order to file bankruptcy. The court in that case recognized that attempts to contract away the right to file bankruptcy are unenforceable, but it also noted that members of a business entity can freely agree among themselves not to file bankruptcy. Thus, the court held that "the issue is

7

whether the Bankruptcy Restrictions were imposed by [the lender], as a creditor, to create an absolute waiver of [the debtor's] right to file bankruptcy." *In re Lexington Hospitality Group, LLC*, 577 B.R. at 684. The court found the restrictions in the amendments to the debtor's operating agreement were unenforceable, because they "added to [the debtor's] governing documents, and the dilution of [the manager's] membership interests to enable an entity controlled by [the lender] to carry the deciding vote, create an absolute waiver of [the debtor's] right to file bankruptcy. Therefore, the Bankruptcy Restrictions violate federal public policy and are void as discussed below." *Id.* In contrast, the amendments contained in the Operating Agreements at issue in this case do not create an absolute waiver of the Debtors' right to file bankruptcy. The Debtors are permitted to file bankruptcy cases, provided that all members and the Independent Managers consent. The Secured Creditor has no role in that decision. The fact that the Debtors have chosen not to comply with these requirements in order to obtain the requisite authorization to file the Chapter 11 Cases does not mean that the provisions create an absolute waiver of the Debtors' right to file bankruptcy.

12. Finally, in *In re Insight Terminal Solutions, LLC*, 2019 WL 4640773 (Bankr. W.D. Ky. Sep. 23, 2019), the court denied the lender's motion to dismiss the debtors' cases as unauthorized filings. But there, the lender held warrants and the debtor's loan documents required the unanimous consent of all warrant holders to file bankruptcy. In addition, the lender required the debtors to include provisions in their loan documents that upon default, the lender would automatically retain the pledged 100% membership interests in the debtors after 20 days' notice. The debtors defaulted and the lender sent the notice of its intention to retain the collateral. The debtors filed their bankruptcy cases prior to the expiration of 20-day notice period. At the trial on the lender's motion to dismiss, the lender's witness admitted that the provision to automatically

8

retain the pledged collateral was intended to be a prohibition against bankruptcy filings by the debtor. The court found that "the terms of the surrender of the collateral were not fully consummated as there was no completion of the strict foreclosure process. Furthermore, the attempt to circumvent the bankruptcy laws and public policy by 'circuitry of arrangement,' were ineffective. [The lender] tried to get around this argument by making itself an equity holder, however, the process to achieve this was not completed. [The lender] did not become the equity holder, nor did they become the owner of the collateral through the strict foreclosure process. Furthermore, attempts to limit the Debtors' access to the bankruptcy process were against public policy and invalid." *In re Insight Terminal Solutions, LLC*, 2019 WL 4640773 at * 3. Those facts are not present here. In this case, there was no attempt by the Secured Creditor to create a prohibition against filing bankruptcy—the Debtors may take Material Actions (including filing bankruptcy), but only after unanimous consent of the members and the Independent Managers. These provisions have been held enforceable, *see supra*, but the Debtors simply chose not to comply with them. Nor has the Secured Creditor included a provision for the automatic retention of 100% (or any percentage) of the Debtors' membership interests so that the Debtors are displaced from control and unable to file bankruptcy cases.

13. Furthermore, the Debtors suggest that the Secured Creditor might not have standing (as a lender) to argue that the Debtors' failure to comply with the provisions of the Operating Agreement resulted in the lack of authority to file the Chapter 11 Cases. The Debtors note that the cases cited by the Secured Creditor in its Motion all involve equity members vindicating their rights as members under operating agreements, whereas the Secured Creditor is not an equity holder. This argument is meritless. The Secured Creditor is moving under section 1112(b)(1) of the Bankruptcy Code for dismissal, and that section provides that a motion to dismiss under section

9

1112 may be brought "on request of a party in interest." 11 U.S.C. § 1112(b)(1); *see also In re 167 W. 133rd St. Housing Dev. Fund. Corp.*, 2018 WL 4637460, at *6 (Bankr. S.D.N.Y. Sep. 25, 2018) ("It is settled that the lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for 'cause' for relief under § 1112(b) of the Bankruptcy Code."). The Secured Creditor is certainly a party interest, and the Debtors would be disingenuous to argue otherwise.

**II.  THE TRUSTEE WAS NOT AUTHORIZED TO COMMENCE THE CHAPTER 11 CASES ON BEHALF OF THE DEBTORS AND THE DEBTORS HAVE NOT RATIFIED THE UNAUTHORIZED FILINGS**

14. As set forth above and in the Motion, the provisions in the Operating Agreements requiring unanimous consent and Independent Manager approval are enforceable. The Trustee did not obtain either before filing the cases and so he was not authorized to file the Chapter 11 Cases. The Debtors acknowledge that the Trustee did not obtain the consent of all of the members and the Independent Managers did not authorize the filings.

15. As of the date hereof, the Debtors have not provided any evidence that the unauthorized filing of the Chapter 11 Cases has been ratified by all the members of the Debtors and the Independent Managers, as required under the Operating Agreements. Accordingly, the Chapter 11 Cases must be dismissed.

**CONCLUSION**

16. For all the reasons set forth herein and in the Motion, the Secured Creditor respectfully requests that the Court enter an order dismissing the Chapter 11 Cases, and grant the Secured Creditor such other relief as may be just and proper.

Dated: New York, New York
September 20, 2024

        RUBIN LLC

        By:    */s/ Paul A. Rubin*
             Paul A. Rubin
             Hanh V. Huynh
        11 Broadway, Suite 715
        New York, New York 10004
        Tel: 212.390.8054
        prubin@rubinlawllc.com
        hhuynh@rubinlawllc.com

        *Counsel for A10 Capital, LLC, in its capacity as Servicer and Special Servicer, for and on behalf of Wilmington Trust, National Association, solely in its capacity as Trustee in trust for Holders of A10 Single Asset Commercial Mortgage 2023-GTWY, Commercial Mortgage Pass-Through Certificates, Series 2023-GTWY*