UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

                                           Chapter 11

The Gateway at Wynwood LLC,             Case No. 24-72586-LAS
2830 Wynwood Properties LLC              Case No. 24-72589-LAS

                       Debtors.                   Jointly Administered
---------------------------------------------------------------x

## DEBTORS' JOINT CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION

The Gateway at Wynwood LLC (the "Gateway Debtor") and 2830 Wynwood Properties LLC (the "2830 Debtor" and, collectively, the "Debtors") hereby propose the following Chapter 11 liquidating plan of reorganization (the "Plan") pursuant to §1121(a) and other provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## OVERVIEW

Contemporaneously herewith, the Debtors filed a motion (the "Sale Procedures Motion") for entry of an Order approving bidding procedures and authorizing the auction sales (the "Auction") of the Gateway Debtor's real property located at the Gateway at Wynwood, 2916 North Miami Avenue, Miami, Florida (the "Gateway Property") and the 2830 Debtor's real property located at 2830 North Miami Avenue, Miami, Florida (the "2830 Property" and, collectively, the "Properties").  In the Debtors' view, a bankruptcy Auction process provides the most advantageous method to obtain going concern values for the Properties.  The Debtors hope to obtain the consent of A10 Single Asset Commercial Mortgage 2023-GTWY, Commercial Mortgage Pass-Through Certificates, Series 2023-GTWY (the "Lender") to the terms of the Plan based upon an Auction process.

The Plan provides the framework to implement the auction sales of one or both of the Properties and distribute the proceeds to pay allowed claims. The Debtors shall seek the Lender's consent to a coordinated sale process as an alternative to the Lender proceeding with its lift stay motion. If consent can be obtained, the Plan also provides for carveouts to pay: (i) allowed administrative expenses, including reasonable professional fees for the Debtors' counsel; (ii) U.S. Trustee fees; (iii) Priority Tax Claims; and (iv) to establish a General Unsecured Creditor Pool of $50,000 from which a *pro rata* distribution shall be made to the holders of allowed unsecured claims (items (i), (ii), (iii) and (iv) collectively referred to as the "Lender's Contribution").

# ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1 "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Property; and (b) compensation for the Debtors' legal counsel and professional advisors (the "Professionals") as allowed by the Bankruptcy Court.

1.2 "**Allowed Claim**" means a Claim timely filed before the Bar Date or which was scheduled by the Debtors without being designated as contingent, unliquidated or disputed, and in either case, a claim (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by Final Order; or (ii) by an agreement between the creditor and the Debtors.

1.3 "**Approved Bidding Procedures**" shall mean the final bid procedures approved by the Bankruptcy Court for conducting the Auction for the Properties, the qualification of bidders to bid at the Auction, replete with Credit Bid rights and other related matters.

1.4 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.5 "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtors pursuant to Bankruptcy Rule 1007, as same may be amended or supplemented.

1.6 "**Bar Date**" means the deadline to be set by the Bankruptcy Court to file a Claim against the Debtors.

1.7 "**Broker**" means CBRE, Inc. ("CBRE"), which shall be engaged by the Debtors to market and sell the Properties.

1.8 "**Cash Collateral Stipulation**" means the Stipulation Authorizing Debtors' Use of Cash Collateral, Providing Adequate Protection of Lender's Interests, and Granting Related Relief, first approved by Order of the Bankruptcy Court entered on September 24, 2024 and extended pursuant to stipulation.

1.9 "**Causes of Action**" means any rights, claims, causes of action, damages and remedies in favor of the Debtors' estate relating to any pre-petition transactions (including all avoidance claims under the Bankruptcy Code or state law).

1.10 "**Claim**" means a claim against the Debtors as defined in Bankruptcy Code § 101(5).

1.11 "**Claim Objection Deadline**" shall mean thirty (30) days after the Effective Date of the Plan.

1.12 "**Class**" means a category of holders of Claims or Equity Interests as set forth in Article IV herein.

1.13 "**Closing Date**" means the day when the Debtors consummate and close on the Sales of the Properties pursuant to the Confirmation Order.

1.14 "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.15 "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.16 "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.17 "**Creditor**" means the holder of a Claim against the Debtors.

1.18 "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP for purposes of effectuating the initial distributions provided hereunder.

1.19 "**Disputed Claim**" means: (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim (including an Administrative Expense), or

portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

1.20 "**Disputed Claim Reserve**" means the escrow established by the Debtors at the Closing with the Disbursing Agent for the deposit of cash reserves to secure payment of the disputed portion of a creditor's particular claim.

1.21 "**Effective Date**" means the Closing Date on the sales of the Properties.

1.22 "**Final Order**" means an order of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired, or if any appeal, has been sought, the order of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed from and the time to take any further appeal has expired.

1.23 "**General Unsecured Creditor Pool**" means the amount of Fifty Thousand Dollars ($50,000) to be contributed to pay the Allowed Claims of Class 2 general unsecured creditors.

1.24 "**Petition Date**" means July 1, 2024, the date on which the voluntary petitions commencing these Chapter 11 cases were filed.

1.25 "**Priority Claim**" means any Claim that is entitled to priority pursuant to Bankruptcy Code § 507(a) that is timely filed or which was scheduled by the Debtors without being designated as contingent, unliquidated or disputed, and in either case, a Claim (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by Final Order; or (ii) by an agreement between the Debtors and the Lender.

1.26 "**Priority Tax Claim**" means any Claims of a federal, state or local taxing authority for real estate taxes or related charges.

1.27 "**Reorganized Debtors**" means the Debtors following confirmation of the Plan.

1.28 "**Secured Claim**" means a Claim secured by a lien, mortgage or security interest on any or all of the Properties.

1.29 "**Successful Purchaser**" means the bidder(s) who the Court determines made the highest and/or best bid(s) for the Properties.

1.30 "**Unsecured Claim**" means any allowed general unsecured claim arising prior to the Petition Date not entitled to priority in bankruptcy or otherwise secured by property of the Debtors.

1.31 "**Unsecured Creditor**" means the holder of an Unsecured Claim.

1.32 "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTEREST

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Secured Claim of the Lender.

**Class 2** – Allowed General Unsecured Claims.

**Class 3** – The Equity Interests of the Debtors and Reorganized Debtors.

## ARTICLE III

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, U.S. Trustee Fees, or Priority Tax Claims all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

3.1 **Administrative Expenses**. Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving and selling the Properties, including allowed brokerage commissions, and allowed Professional Fees. The Debtors are current with their post-petition operating expenses and expect to remain so throughout the duration of the Chapter 11 cases.

3.2 **Administrative Expense Bar Date**. A date establishing an Administrative Expense Bar Date filed by separate Order at the time of the entry of the Confirmation Order, and shall be served upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims.

5

Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall be forever barred, estopped and enjoined from asserting such Administrative Expense against the Debtors and Reorganized Debtors.

3.3     **Professional Fee Claims**.  All requests by the Debtors' retained professionals for allowance of fees and reimbursement of expenses ("**Professional Fee Claims**") shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. § 330.  The Professionals retained or to be retained, in these cases are the Debtors' attorneys, Goldberg Weprin Finkel Goldstein LLP ("GWFG") and David Goldwasser of FIA Capital Partners LLC as Chief Restructuring Officer ("CRO").  GWFG has agreed that its respective net fees shall not exceed $150,000 (the "**Professional Fee Cap**").  The allowed amounts of Professional Fee Claims shall be determined by the Bankruptcy Court and paid by the Disbursing Agent upon entry of an appropriate Order awarding such compensation after notice and a hearing.  The CRO is paid $5,000 a month pursuant to the budget filed with the Cash Collateral Stipulation.

3.4     **U.S. Trustee Fees**.  To the extent not otherwise paid, the Debtors shall pay all accrued U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 cases are closed by entry of a Final Decree.

3.5     **Priority Tax Claims**.  There were no Priority Tax Claims filed against the Debtors or scheduled by the Debtors.  To the extent any Priority Tax Claims are not paid prior to the Effective Date, all Priority Tax Claims shall be paid on the Effective Date of the Plan.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and interests against the Debtors consistent with the applicable provisions of the Bankruptcy Code.

4.1     **Summary**.  The categories listed below classify Claims and Equity Interests against the Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| **Class** | **Designation** | **Impaired** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Lender's Secured Claim | Yes | Yes |
| Class 2 | Unsecured Claims | Yes | Yes |
| Class 3 | Equity Interests | No | No |

4.2     **Class 1: The Secured Claims of the Lender**

**Classification** - Class 1 consists of the alleged Secured Claim of the Lender in the total pre-petition judgment amount of $111,938,533.65, including all principal, accrued interest, fees and costs.  The alleged Secured Claim may include additional interest and reasonable fees, costs, or charges provided for under the Secured Loan Documents or applicable law pursuant to Bankruptcy Code § 506(b).

**Treatment** – The Lender shall be entitled to alternate treatment depending on whether a third party buyer emerges (acceptable to the Lender) as making the highest and best offer to acquire one or both of the Properties, or the Lender exercises its Credit Bid Rights and purchases one or both the Properties in exchange for the Lender's Contribution.  Under scenario number one, should one or both of the Properties be sold to a third-party buyer acceptable to the Lender, the Lender shall be entitled to all net sale proceeds up to the full amount of its allowed secured claims, after payment is made to the holders of allowed Administrative Expenses (as capped and budgeted), Priority Tax Claims, U.S. Trustee Fees and the General Unsecured Creditor Pool, in accordance with the Lender's Contribution.  If the Lender (or its nominee, designee or assignee) is the Purchaser of the Properties pursuant to the credit bid, it shall receive a transfer conveyance of the Properties as provided below.

Notwithstanding anything herein to the contrary, the Lender (or its nominee, designee or assignee), although under no obligation to do so, is entitled to credit bid up to and including the total amount of its allowed claim for the Properties pursuant to 11 U.S.C. Section 363(k). In the event of a credit bid by the Lender (or its nominee, designee or assignee), then in such event, the Lender shall have a Class 2 deficiency claim which the Lender may vote, but Lender waives the right to receive a *pro rata* dividend based upon distribution of the General Unsecured Creditor Pool. In addition, the Debtors consent to the validity of the Lender's Claim and loan documents and will not object to any Claim filed by the Lender.

**Voting** –The Lender is impaired and is eligible to vote on the Plan.

4.3     **Class 2: Unsecured Claims**

**Class 2: Unsecured Claims Classification** – The Debtors are classifying all other Claims as being fully unsecured. The final allowed amounts of the respective unsecured claims are subject to final review and reconciliation by the Debtors, and potential objections.

**Treatment** – To the extent that any residual Sale Proceeds become available from the sale of the Properties based on a bona fide third-party sale offer satisfactory to the Lender (after payment of Administrative Expenses (as capped and budgeted), Priority Tax Claims, and the allowed Class 1 Secured Claim of the Lender in such amount as the Lender agrees), the holder of allowed Class 2 Unsecured Claims shall be paid and receive a *pro rata* dividend from the residual Sale Proceeds. Far more likely, however, in the event of a third-party bid less than the allowed amount of the Lender's claim or a credit bid by the Lender without receipt of an acceptable third-party offer, then allowed Class 2 Unsecured Claims shall be paid and receive a *pro rata* dividend based upon distribution of the Creditor Reserve.

**Voting** – The Class 2 Claims of Allowed General Unsecured Creditors are impaired and eligible to vote on the Plan.

4.4    **Class 3: Equity Interests**

**Classification** – Class 3 consists of the Equity Interests in the Debtor.

**Treatment** – No payments, if any, shall be made on account of equity interests in the Debtors unless and until all other secured, priority and unsecured claims have been paid in full and the Debtors' Chapter 11 cases have been fully administered and closed.

**Voting** – While Class 3 equity interests are impaired under the Plan, as insiders, they are not entitled to vote on the Plan.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 **Sale Free and Clear of All Claims, Liens, Taxes and Interests**.  The Plan shall be implemented and funded through the sale of the Properties in accordance with the Auction sale process conducted pursuant to the terms of the Approved Bidding Procedures.  The results of the Auction whether based upon the Lender's credit bid or an acceptable third-party buyer(s) satisfactory to the Lender (in either event, the "Successful Purchaser") shall be confirmed at the Confirmation Hearing and incorporated as part of the Plan and Confirmation Order.

5.2    **Provisions Relating to the Sale Process.**

(a)    Free and Clear Sale.  The transfer of one or both of the Properties to the Successful Purchaser shall be effectuated by a Bargain and Sale Deed, free and clear of all Liens, Claims and Interests.

(b)    Sale Approval Order.  The sale to the Successful Purchaser shall be subject to approval of the Bankruptcy Court under 11 U.S.C. § 363(b) through confirmation of the Plan and entry of the Confirmation Order.

(c)    Deadline to Close.  The sale shall close in accordance with the Approved Bidding Procedures or such later date as is agreed to by the Debtors and the Lender.

    (d)    <u>Transfer of Assets</u>.  The Properties shall remain in the Debtors' Estates under § 541(a) of the Bankruptcy Code until the Effective Date of the Plan.  Upon closing of a sale, the Properties shall be transferred and conveyed to the Successful Purchaser as provided herein.  The Confirmation Order shall contain appropriate provisions authorizing and directing the Debtors acting by and through the CRO to execute or deliver, or to join in the execution or delivery, on the Closing of all conventional conveying documents and instruments, including a Bargain and Sale deed and Assignment of Leases and Rents, required to effect a transfer of real property in Florida, and to perform any act that is necessary for the consummation of the Plan.

    (e)    <u>Distribution of Third-Party Sale Proceeds</u>.  The Sale Proceeds realized from the sale of the Properties to an acceptable bona fide third-party buyer satisfactory to the Lender shall be distributed in conjunction with other Available Cash to the holders of Allowed Claims and Interests in the following order:

<u>First</u>, to holders of Allowed Administrative Expenses subject to the agreed caps and allowed Priority Tax Claims;

<u>Second</u>, to the Lender up to the amount of its allowed Secured Claim subject to the Creditor Reserve.

<u>Third</u>, to Class 2 unsecured creditors to the extent funds are available to pay a *pro rata* distribution from either the residual Sale Proceeds or the Creditor Reserve.

    (f)    <u>Distribution of the Lender's Contribution</u>.  In the event of a credit bid by the Lender, with the Lender being deemed the Successful Purchaser, the Lender shall pay to the Debtor's estate the Lender's Contribution in consideration for the transfer of the Property free and clear of all claims, liens and interests, unless the Property is sold subject to the Lender's lien.

    5.3    **Transfer Taxes**.  The sale of the Property constitutes the making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, the Plan provides that to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an issuance of any Property Transfer Instruments, including the Bargain and Sale and Deed executed by the Debtor, shall not be subject under any law imposing a stamp tax, mortgage recording tax as applicable

relating to financing for the sale, real estate transfer tax or similar tax (previously defined as, the "Transfer Taxes"). Accordingly, the appropriate officials or agents of state or local governmental unit in Dade County, Florida, shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

5.4    **Preservation of Causes of Action**.  All claims, causes of action, damages or remedies belonging to the Debtors' estates relating to any prior transactions (including any avoidance claims under the Bankruptcy Code or state law) shall be preserved for the benefit of the Debtors' estates, with any recovery therefrom to be distributed in accordance with the priority structure set forth in the Bankruptcy Code and/or applicable order(s) of the Court.

5.5    **Post-Confirmation Management.**  The post-confirmation management of the Debtors shall continue without change to dissolve the Debtors.

5.6    **Substantive Consolidation.**  The Plan envisions the substantive consolidation of the Debtors for purposes of Confirmation of the Plan.  As a result, a holder of a Claim scheduled against one or more of the Debtors arising from or relating to the same underlying debt shall only have a single Allowed Claim against all of the Debtors regardless of whether the Claim is based on a specific note or joint and several liability, contribution, indemnity or subrogation.  Such substantive consolidation, however, shall not affect (other than for Plan voting, treatment, and/or distribution) the legal and corporate structures of the Reorganized Debtors. As part of the confirmation process, the Plan shall serve as a request to substantively consolidate the Chapter 11 Cases. Unless an objection to substantive consolidation is made in writing by any creditor affected by this Plan in conjunction with confirmation; the Confirmation Order shall include a provision approving Substantive Consolidation.  In the event any objections to Substantive

Consolidation are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court as part of the Confirmation Hearing.

## ARTICLE V

## DISTRIBUTIONS

6.1 **Method of Payment**.  Unless otherwise expressly agreed, in writing, payments to be made pursuant to the Plan shall be made at the times and in the amounts set forth in the Plan by either electronic funds wire transfer or check drawn on a domestic bank.

6.2 **Disbursing Agent**. All Distributions and/or payments under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All Cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at a banking institution that is an authorized depository in the Eastern District of New York.  The Disbursing Agent shall not be compensated for services rendered under the Plan (excluding legal matters relating to the closing and objections to claims).  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the Sale Proceeds and ending on the date that all disbursements contemplated by the Plan have been distributed.  The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtors.  Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Properties and other conveyance documents in place (including, but not limited to the appropriate transfer tax returns), instead of members of the Debtors, or other authorized parties of the Debtors, and shall have no other powers or

authority with respect to the Debtors. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtors. In addition to the foregoing, the Disbursing Agent shall be entitled to open and maintain an Interest on Lawyers Account (IOLA) with Goldberg Weprin Finkel Goldstein LLP at an Eastern District of New York authorized depository.

6.3     **Rights and Powers of Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) to object to claims and make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.4     **Disputed Claims Reserves**. No distributions shall be made with respect to any Disputed Claim. Instead, the Debtors shall deposit into one or more segregated accounts (the "Disputed Claims Reserves," each being a "Disputed Claims Reserve") funds equal to 100% of the Cash that would be distributed under the Plan to the holder of a Disputed Claim that would be an Allowed Claim, but for the dispute. In determining the amount of the Cash to be distributed under the Plan to the holders of Allowed Claims, the calculation of the amount to be distributed to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts. The Debtors or any other party in interest shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating the amount of a Disputed Claim, and limiting the amount of Cash that must be so deposited.

6.5 **Prosecution of Objections**. The Debtors shall have the right to file, settle, compromise, withdraw or litigate, to final order or judgment, objections to Disputed Claims. Objections to Claims, other than Administrative Expense Claims, shall be served and filed on or before the Claims Objection Deadline.

6.6 **Distribution After Allowance**. Within ten (10) days after entry of a Final Order finding all (or part of) a Disputed Claim to be an Allowed Claim (or as soon thereafter as practicable), the Debtors shall distribute from the funds placed in the Disputed Claims Reserve with respect to such Claim, all Cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

6.7 **Delivery of Distributions**. Distributions to holder of Allowed Claims shall be made: (i) at the address set forth on the respective Proof(s) of Claim or other request(s) for payment filed by the holder of such Allowed Claim; (ii) at the addresses set forth in any written notices of address change delivered to the Debtors; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Debtors have not received a written notice of change of address. If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest. Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution"). A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if

no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder.  If such a notice is provided, then, after receipt of such additional information as the Debtors may require confirming the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

## ARTICLE VI

## INJUNCTIONS AND EXCULPATION

7.1     **Injunction**.  Except (i) as otherwise provided in the Plan or Confirmation Order or (ii) to enforce the Plan or Confirmation Order, on and after the Effective Date, all persons and entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtors that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Section 1141(d)(3) of the Bankruptcy Code are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Debtors or the Property; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors or the Property.

7.2     **Exculpation**.  Notwithstanding any other provision of the Plan, neither the Debtors nor their respective officers, directors, members, employees or other agents, financial advisors, attorneys, accountants or Professionals shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation,

preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 cases, or any of the transactions contemplated under the Plan, except for liability resulting from conduct constituting gross negligence, willful misconduct or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    **Assumption of Leases**.  The Debtors' executory contracts and unexpired leases are deemed automatically assumed on the "Effective Date" of the Plan, unless such executory contracts and unexpired leases (a) have previously been rejected, (b) are subject of a motion or notice to reject, or (c) are rejected pursuant to the terms of the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

9.1    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction after Confirmation of the Plan to consider the following matters:

(a)    To enforce, implement, interpret or modify the Plan under applicable provisions of the Bankruptcy Code;

(b)    To issue any Orders as may be necessary to effectuate the sale of one or both of the Properties;

(c)    To ensure that the Plan is fully consummated, and to enter a Final Decree;

(d)    To allow, disallow, determine, liquidate or classify any Claims and Administrative Expenses;

(e)    To consider applications filed by Professionals for final compensation and reimbursement of expenses; and

(f) To resolve any motions, adversary proceedings or applications pending on the Effective Date.

## ARTICLE IX

## GENERAL PROVISIONS

10.1 **Headings**. The headings in the Plan are for reference purposes only.

10.2 **Contents of Confirmation Order**. The Confirmation Order may contain various provisions as may be necessary to modify, implement or enforce the Plan.

10.3 **No payment of Disputed Claims**. The Plan contemplates the payment of Allowed Claims only. No distributions shall be made on account of any Disputed Claim(s), until such Disputed Claim(s), or any part thereof, becomes an Allowed Claim in whole or in part.

10.4 **Modification of the Plan.** The Plan may be altered, amended or modified by the Debtors at any time before substantial consummation thereof in accordance with the Bankruptcy Code, following notice and a hearing.

10.5 **Quarterly Fees**. All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtors until the earlier of the conversion or dismissal of this case under 11 U.S.C. §1112 of the Bankruptcy Code, or the closing of the Chapter 11 case under 11 U.S.C. §350(a).

10.6 **Notice of Effective Date of the Plan**. The Debtors shall file with the Court a Notice of the Plan's Effective Date within three (3) business days of the occurrence of the Effective Date.

10.7 **Post-Confirmation Reports**. Commencing on the Effective Date, the Reorganized Debtors shall file reports with the Bankruptcy Court on a quarterly basis, reflecting disbursements made by or on behalf of the Debtors. The reports shall be filed within twenty (20)

days after the conclusion of each such period until the cases are closed by means of the entry of a Final Decree closing Debtors' bankruptcy cases, dismissal or conversion, whichever happens earlier. All such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee's Guidelines for such matters pursuant to 28 C.F.R. §58.8.

      10.8    **Closing the Cases**. Within fourteen (14) days following the full administration of the Debtors' estates, the Debtors shall file on notice to the United States Trustee, an application, and proposed Order for a Final Decree.

Dated: New York, NY
          March 28, 2025

| | |
|---|---|
| The Gateway at Wynwood LLC<br>2830 Wynwood Properties LLC<br>*Debtors and Debtors in Possession* | Goldberg Weprin Finkel Goldstein LLP<br>*Attorneys for the Debtors and Debtors in Possession*<br>125 Park Avenue, 12th Floor<br>New York, NY 10017 |
| By:   /s/ David Goldwasser, CRO | By:   /s/Kevin J. Nash, Esq. |